UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


United States of America,                                    Case No. 3:19cr665

               Plaintiff,

    v.                                                          ORDER

Kalep Evans,

               Defendant.


On December 6, 2019, Magistrate Judge James R. Knepp II conducted a detention hearing at the behest of Defendant Kalep Evans.  After reviewing proposed conditions of release and hearing the arguments of counsel, Judge Knepp denied Mr. Evans relief, finding that although the law provides for the presumption of his release, the government persuaded him that Mr. Evans was a risk of flight or a danger to the safety of the community, or both, applying the applicable standards of review.  He further found, upon reviewing all matters required by rule and statute, that the defendant did not meet his burden of overcoming his findings supporting detention.  (Doc. No. 10.)

On March 17, 2020, Mr. Evans filed a request for reconsideration of detention.  (Doc. No. 19.)  The government opposed.  (Doc. No. 20.)  Mr. Evans then replied.  (Doc. No. 21.)  On April 16, 2020,  Mr. Evans refined his request, characterizing his request as asking for a review of Judge Knepp's decision, and offering conditions supporting his release and arguing there had been a change in circumstances – the ongoing Covid-19 pandemic – also supporting release.  (Doc. No. 24.) I treat the motion as a request for release due to that change of circumstances, as well as an

objection to Judge Knepp's earlier adverse determination, pursuant to Rule 59 of the Federal Rules of Criminal Procedure.  In anticipation of conducting a hearing for my de novo review of Mr. Evans's request for release, I ordered the transcript of the hearing before Judge Knepp.  (Doc. No. 25).  The government filed another memorandum in opposition to bond.  (Doc. No. 27)  I also reviewed the Pretrial Services Report and the Addendum to that report concerning Mr. Evan's bond status and request for release.  (Doc. Nos. 9 and 28).

On August 24, I held the first of two hearings concerning Mr. Evans's request for release. Because reference was made through argument by the government to a video recording of the circumstances surrounding the arrest of Mr. Evans, I continued the hearing and requested a copy of the recording for review.  The defendant consented to my reviewing the recording.  The government presented the recording and further argument in writing.  (Doc. Nos. 29 and 30).  On September 11, I resumed the bond hearing, having had prior benefit of reviewing the video recording created from the body camera of an arresting officer.  At the conclusion of the hearing, I took the matter under advisement and render my decision here.

First, as I addressed above, my review of the Magistrate Judge's decision is de novo.  Also, I must consider the change of circumstances and how the risk of infection from Covid-19 might affect my decision on Mr. Evans's release.  I'll address the Covid-19 argument first.

While I am certainly sympathetic to Mr. Evans's concerns about his health during this pandemic, nothing he argues presents a sufficient change to warrant release.  While it is true there have been some cases of Covid-19 at both local custody facilities, it would appear that both jailers now have the spread of infection under control.  In addition, Mr. Evans presents no evidence of any remarkable co-morbidity which might support his release due to heightened risk of complications or death should he be infected.  For all of those reasons, I deny his release due to any change in the circumstances of his confinement due to Covid-19.

Regarding review of his conditions for release, Mr. Evans proposes being released to the custody of his mother for the duration of his case.  I have no doubt his mother would generally serve as a suitable custodian during his release.  And at any rate, there is a presumption for his release in this case.

Of concern, though, is Mr. Evans's presumed ignoring of a no-firearm restriction that was imposed by a judge of the Maumee, Ohio Municipal Court and which was in effect at the time of his stop and arrest in this case.  Indeed, that restriction served as an element supporting his charge in this case.  The facts underlying support of the Municipal Court charge – and attendant firearms restriction during his release – was premised on the troubling allegation of a threat made by Mr. Evans to harm his then girlfriend.  Indeed, it is the timing of his carrying the weapon at issue in this case that is troubling to the Court.

While it is true, as the Mr. Evans argued, that the charge in the Maumee Municipal Court was eventually resolved, essentially with a finding that if Mr. Evans did not commit further law violations the matter would be off-docketed or essentially dismissed, that finding by the Maumee court does not negate the validity and appropriateness of the bond restriction on firearms.

Also troubling to me is Mr. Evans's conduct upon pursuant and arrest, as proffered by the government and evidenced by the body camera worn by one of the responding and arresting officers.  When the vehicle in which Mr. Evans was stopped by a number of responding Toledo Police Department units, he was sitting in the front passenger seat.  The vehicle's doors were apparently locked and the windows are clearly up.

Despite repeated and forceful commands by the responding officers, including the officer wearing the body camera, to open the door and exit the vehicle, Mr. Evans repeatedly refused, instead insisting on making a mobile telephone call to his mother.  This refusal to comply with the officers' orders during a tense situation in which the officers had their weapons drawn is of great

concern. Mr. Evans then compounded the incident as he then apparently separated a magazine from the handgun he possessed, and placed one in the glove compartment and tossed the other to the car's floor.

It is not Mr. Evans's custodian that presents a bar to his release. But it is his conduct leading up to and during the arrest for this charge that troubles me. Frankly, I do not have confidence in the safety of the community should I release him from custody, as he blatantly ignored an order of his release as set by another judge and in effect at the time of the vehicle stop. He then delayed an appropriate response to direct commands by responding officers, endangering the safety of the driver, the officers, and himself. Instead, he made an effort to conceal the firearm he apparently possessed in defiance of another court's order. The government has carried its burden of convincing me that his conditions of release cannot assure the safety of the community, and the government has carried that burden by clear and convincing evidence. While Mr. Evans has made skilled arguments and distinctions through his counsel, he cannot overcome this finding.

Accordingly, Mr. Evans requested for review and release on bond – both due to his objection to the Magistrate Judge's determination and a change of circumstances – is found not well taken and denied (Doc. 24).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge